THE STATE OF UTAH ex relatione JOSEPH HALL, Appellant, v. ALBERT J. HOWELL, Respondent.

No. 1414.   (72 Pac. 187.)

1. **Courts: Act Creating Municipal Court: Constitutionality.**

Constitution, article 8, section 1, provides that: "The judicial power of the State shall be vested in the Senate sitting as a court of impeachment, in a supreme court, in district courts, in justices of the peace, and such other courts inferior to the supreme court as may be established by law." Act March 14, 1901 (Sess. Laws 1901, p. 117, c. 112), reads: "That in all cities of this State having a population of more than fifteen thousand and less than forty thousand inhabitants, there is hereby created a court to be called 'The municipal court for ———— city, Utah.' Said court shall consist of a judge. . . ." Held, clearly within the power granted the Legislature by the constitutional provision.

2. **Same: City Justice of the Peace: Abolition of Office: Power of the Legislature.**

Act March 22, 1901 (Sess. Laws 1901, p. 109, c. 108), relating to the election of city officers, contains the following, viz.: "Provided, that in cities having a population of over fifteen thousand the office of city justice of the peace is hereby abolished and no election for said office shall be held. This proviso shall not affect the office, or term of office of present city justices of the peace." Held, that, as the office of city justice of the peace is not among the offices established by the Constitution, but is purely statutory, the act was within the power conferred on the Legislature by Constitution, article 8, section 1.

**3. Same: Officers Holding Over.**
Where the office of city justice of the peace was abolished, and the election of a successor to the justice then in office prohibited, by an act of the Legislature, the incumbent could not continue to hold the office after the expiration of the term for which he was elected.

(Decided April 16, 1903.)

Appeal from the Second District Court, Weber County.—*Hon. H. H. Rolapp*, Judge.

Action by the State of Utah on the relation of Joseph Hall against Albert J. Howell to determine the right of said Howell to exercise, as judge of the municipal court of Ogden City, the jurisdiction conferred by chapter 112, page 117, Laws of Utah 1901. From a judgment dismissing the complaint, the relator appealed.

AFFIRMED.

*George Halverson, Esq.*, and *James N. Kimball, Esq.*, for appellant.

*A. R. Heywood, Esq.*, and *John E. Bagley, Esq.*, for respondent.

BASKIN, C. J.—Section 3613, Revised Statutes 1898, provides that: "A person claiming to be entitled to a public office unlawfully held and exercised by another, may, by himself or by an attorney and counselor at law, bring an action therefor . . . such person shall enter into an undertaking with two sufficient sureties, to be approved by the judge or any judge of the court in which the action is brought, conditioned that such person will pay any judgment for costs or damages recovered against him, and all costs and expenses incurred in the prosecution of the action, which undertaking shall be filed with the clerk of the court." Section 3614 pro-

vides that: "When the action is against a person for
usurping, intruding into, or unlawfully holding or ex-
ercising an office, the complaint shall set forth the name
of the person who claims to be entitled thereto, with an
averment of his right thereto, and judgment may be
rendered upon the right of the defendant, and also upon
the right of the person so averred to be entitled, or only
upon the right of the defendant, as justice requires."
This action is based upon said sections.

The allegations of the complaint are, as follows:
"Comes now Joseph Hall, by his attorneys, and in the
name and by the authority of the State of Utah complains
and alleges: (1) That on the 7th day of November,
1899, at Ogden City, Utah, an election was held for the
purpose of electing, among other municipal officers for
said city, a city justice of the peace for the term of two
years, and until his successor should be elected and
qualified. (2) That at said election he received the
highest number of votes for said office, and thereafter
duly qualified, and on the first Monday in January,
1900, entered upon the performance of the duties of said
office, and continued to perform the same up till the first
Monday in January, 1902. (3) That upon said day
the said defendant, claiming to be the successor of re-
lator by reason of the election of said defendant to the
office of municipal judge for said city, under and in
pursuance of an act of the Legislature of the State of
Utah entitled 'An act to create and organize a municipal
court in certain cities, and to define the powers, and
duties, and jurisdiction thereof, and making the judge
of said court ex-officio justice of the peace of said cities,
and ex-officio justice of the peace of the precincts em-
braced in said cities,' approved March 14, 1901, and
being chapter 112, p. 117, of the Session Laws thereof,
unlawfully and wrongfully usurped, intruded into, and
unlawfully holds and exercises the said office of city
justice of the peace in and for said Ogden City, and has
ever since withheld the same from said relator. (4)
That since the election of the relator at the time first

aforesaid there has been no lawful successor elected, appointed, or qualified to succeed the relator, other than the defendant, who, on the 5th day of November, 1901, at the municipal election held on said day, was elected municipal judge in and for said city under and by virtue of the act of the Legislature hereinbefore mentioned. (5) That said act is unconstitutional and void, and the said relator is entitled to hold and exercise said office until his successor is elected and qualified.'' A demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of action was sustained, and the complaint dismissed.

The contention of the plaintiff, who is the appellant, is based upon the alleged unconstitutionality of the Act of March 14, 1901 (Sess. Laws 1901, p. 117, c. 112), approved March 14, 1901. The following are the pertinent sections of said act:

''That in all cities of this State having a population of more than fifteen thousand and less than forty thousand inhabitants there is hereby created a court to be called 'The municipal court for ——— City, Utah.' Said court shall consist of a judge. . . . Said judge shall be elected at the election to be held in November, 1901, and biennially thereafter and his term of office shall begin on the first Monday in January, 1902, and shall hold office for the term of two years and until his successor is elected and qualified.''

''Sec. 5. New trials may be had and obtained in said municipal court, according to the course and practice of new trials in courts of the justices of the peace, and for that purpose the procedure and practice relating to new trials in courts of justices of the peace shall be the procedure and practice relating to new trials in said municipal court.

''Sec. 6. The civil jurisdiction of said municipal court shall be the same as that exercised by courts of justices of the peace, and in addition thereto, said court is given like jurisdiction in all cases arising in said county where said court is established.

"Sec. 7. The criminal jurisdiction of said municipal court shall be the same as is now possessed by justices of the peace of cities of the second class, or county justices of the peace."

"Sec. 19. Said judge of said municipal court, shall be ex-officio city justice of the peace, and precinct justice of the peace, and as such municipal judge as aforesaid, shall perform the duties of the offices of said city justice of the peace and of said precinct justice of the peace."

The act approved March 22, 1901, relating to the election of city officers (Sess. Laws 1901, p. 109, c. 108), contains the following, viz.: ". . . *provided,* that in cities having a population of over fifteen thousand, the office of city justice of the peace, is hereby abolished, and no election for said office shall be held. This proviso shall not affect the office, or term of office of present city justices of the peace." At the passage of said act city justices of the peace had exclusive original jurisdiction of cases arising under or by reason of the violation of any city ordinance, and the same jurisdiction as justices of the peace in all other actions, civil and criminal. Sec. 239, R. S. 1898. Ogden City, at the time of the passage of the Act of March 14, 1901, had a population of more than 15,000 and less than 40,000, and was a city of the second class.

Article 8, section 1, of the state Constitution, is as follows: "The Judicial power of the State shall be vested in the Senate sitting as a court of impeachment, in a supreme court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law." Under this section the Legislature has the right, in its discretion, to establish by law special courts, and both in respect to the subject-matter of causes of action and territorial limits to invest them with any jurisdiction inferior to that of the Supreme Court. which, in its wisdom, it may deem necessary. It may, in its discretion, give to such special courts concurrent jurisdiction with the district

courts and justices of the peace, and it may invest them with exclusive original jurisdiction in cases arising under city ordinances.. As the jurisdiction of the special courts which the Legislature is authorized to establish by law is not prescribed by the Constitution, and is limited only by the provision "and such other courts inferior to the Supreme Court," it necessarily follows that it was the intention of the framers of the Constitution that the jurisdiction of such courts, when so established, should, within the prescribed limitation, be determined and fixed by the Legislature; and, as the qualifications of the judges of such courts are not prescribed in the Constitution, it likewise follows that it was the intention that that matter should be left to the discretion of the Legislature. The sections of the Act of March 14, 1901, before quoted, are clearly within the scope of the power granted to the Legislature by article 8, section 1, of the Constitution, and, as it appears from the complaint that the defendant was elected in pursuance of section 1 of that act, he is entitled to exercise the jurisdiction conferred by the subsequent sections quoted from the same act.

The appellant, in support of his contention, asserts that the Act of March 22, 1901, before quoted from, is unconstitutional, because it abolishes the office of city justice of the peace in cities having a population of over 15,000, and provides that no election for said office shall be held. Said act contains a proviso that it shall not affect the office or term of office of present city justices of the peace. It is alleged that the said Joseph Hall was elected a city justice of the peace for the term of two years, and qualified as such on the first Monday of January, 1900, and served in that capacity from that time until the first Monday of January, 1902. Notwithstanding he has served the full term of two years, he still claims the right to continue in office until his successor is elected and qualified. As his office was, by said act, abolished at the end of his term, and the election of his successor prohibited,

he could not continue to hold the office after the expiration of two years, if that act is valid. Throop's Pub. Officers, sec. 326; Beckwith v. City of Racine, 7 Biss. 142, Fed. Cas. No. 1213; Barkley v. Levee Commissioners, 93 U. S. 258, 23 L. Ed. 893. In the first of the above-mentioned cases the court said (page 145, 7 Biss., and Fed. Cas. No. 1213) that: "It is perfectly clear to me that the act of the Legislature which is referred to does not contemplate such a case as this when it declares that the officers of a municipal corporation shall continue in existence until their successors are elected and qualified. In this case there could be no successors elected or qualified, because the capacity to elect had ceased to exist. And it certainly can only refer to cases where that could be done. Therefore it seems to me that the conclusion is irresistible that in this case these officers did not continue to hold an office to which successors can be elected or qualified." In the second case it is said (page 258, 93 U. S., 23 L. Ed. 893): "Where a district was abrogated, and two districts from the same territory were created, and the terms of office of the commissioners of the abrogated district had expired, and no new ones had been elected to fill their places, it was held that the doctrine of corporate officers holding over, where an election of successors is postponed, can not be applied where there is no provision of law authorizing a further election, and the corporate functions have been terminated." See, also, 19 Am. and Eng. Ency. Law (1 Ed.), p. 562q, notes 5, 6.

The office of city justice of the peace is purely statutory, and was established by the special provisions of section 213 of the Revised Statutes of 1898; and, while such justices had concurrent jurisdiction with precinct justices of the peace, under section 239 of said statutes, they also had under said section exclusive original jurisdiction of cases arising under or by reason of the violation of any city ordinance. They are elective under provisions of the election law of 1897 (see Sess. Laws 1897, p. 205, and section 887, Rev. St. 1898) which are ap-

plicable only to municipal elections at a different time
than the election of other justices of the peace, while
the latter officers are elective at the general election of
the State, under provisions of said election law different
from those applicable to municipal elections, and for
regular terms beginning and ending at different times
than the terms of city justices of the peace.  Section
545, Rev. St. 1898, and Sess. Laws 1897, p. 205.  Article
8, section 8, of the Constitution, provides: "The Legis-
lature shall determine the number of justices of the
peace to be elected, and shall fix by law their powers,
duties and compensation.  The jurisdiction of justices
of the peace shall be as now provided by law, but the
Legislature may restrict the same."  Neither by the
Constitution nor by statute are precinct justices of the
peace vested with jurisdiction of cases arising under
city ordinances.  Therefore, as there are, in some of
the cities of the State, several precincts, the jurisdiction
which city justices of the peace had before the office was
abolished was different, both as to subject-matter and
territorial limits, from the jurisdiction of other justices
of the peace.  That the office of the former is a different
office from the latter is clearly shown from the separate
statutes relating to the same, and by the difference in
their respective jurisdictions, the tenure of the offices,
and the difference in the time and mode of electing the
incumbents.  See act relating to precinct officers, Sess.
Laws 1901, p. 109, c. 107.  In pursuance of the provis-
ions of article 4, section 9, Constitution, which are as
follows: "All general elections, except for municipal
and school officers, shall be held on the Tuesday next
following the first Monday in November of the year in
which the election is held.  Special elections may be
held as provided by law.  The terms of all officers elected
at any general election, shall commence on the first Mon-
day in January next following the date of their election.
Municipal and School officers shall be elected at such
time as may be provided by law," and under the pro-
visions of sections 545, 781, Revised Statutes 1898, pre-

cinct justices of the peace, who are precinct officers (section 544, Revised Statutes 1898), are elective at the general election; and city justices of the peace are under said sections of the Constitution and the provisions of sections 213 and 887 of the Revised Statutes of 1898, elective at the special elections therein provided for. The office of city justice of the peace is not among the offices established by the Constitution, and, as it is purely statutory, the Legislature, in its discretion, under the authority conferred by article 8, section 1, of the Constitution, may, before the expiration of the term of the incumbent, alter or abridge the term, or abolish the office entirely; or, when deemed necessary to the public interest, may abolish said office in particular localities of the State, and establish other and different courts therein. It is well settled in the United States that this may be done when the office is created by legislative enactment, unless the Constitution otherwise expressly provides. Throop on Pub. Officers, sec. 19; Mechem on Public Officers, secs. 388, 389; Taft v. Adams, 3 Gray 126; Kilgore v. Magee, 85 Pa. 401; In re Bulger, 45 Cal. 553-557; In re Senate Resolution, 12 Colo. 339, 21 Pac. 485; The People v. Brown, 83 Ill. 95. See, also, section 2482, Rev. St. Utah 1898. Experience had, before the adoption of the Constitution, demonstrated the necessity and utility of the special courts which for many years have existed in large cities of the country; and section 1, article 8, of the Constitution, was evidently inserted to meet that necessity in this State. The personal qualifications of a municipal judge are different from those of a precinct and city justice of the peace. Sess. Laws 1901, p. 118, c. 112, and section 540, Rev. St. 1898. The original jurisdiction of the city justice of the peace of Ogden City, before the office was abolished, was limited to cases arising under the city ordinances, and his concurrent jurisdiction to cases arising in the precinct of a justice of the peace in said city. By section 6 of the Act of March 14, 1901, the municipal court, in addition thereto, has the same jurisdiction as

justices of the peace in all cases arising in the county in which the court is established, so that its jurisdiction is different from the jurisdiction previously belonging to city justices of the peace.

It follows that the defendant is entitled to exercise the jurisdiction conferred by the provisions of the sections of the Act of March 14, 1901, before quoted, and that the office claimed by the said Joseph Hall was rightfully abolished, and that his term expired at the end of two years from the date he qualified and entered upon the duties of his office.   This, we think, is decisive of the case, and that the other objections raised are immaterial, and need not be considered.

The judgment of the court below is affirmed, with costs.

BARTCH, J., and BOOTH, District Judge, concur.